**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| EXOTIC MOTORS MIDWEST, LLC,   )<br>  )<br>        Plaintiff,   )<br>  )<br>v.   )<br>  )<br>GORDON J. GRANT,   )<br>  )<br><u>Serve</u>:   )<br>         Gordon Grant   )<br>         13 Rabbit Run Road   )<br>         Malvern, Pennsylvania   )<br>  )<br>         or   )<br>  )<br>         2020 Rittenhouse Square   )<br>         Philadelphia, Pennsylvania   )<br>  )<br>  )<br>        Defendant.   )<br>  )  | Case No.:<br><br>**JURY TRIAL DEMANDED** |

## <u>COMPLAINT</u>

Plaintiff, Exotic Motors Midwest, LLC ("Exotic Motors"), by its undersigned attorneys, respectfully states as follows for its Complaint against Gordon J. Grant:

### **NATURE OF THIS LAWSUIT**

1. In this lawsuit, Exotic Motors seeks to recover a 1997 Porsche 911 Carrera 2 Turbo S Coupe, VIN Number WPOAC2993VS375918 (the "Porsche"), Exotic Motors purchased from Gordon Grant.

2. As part of a larger deal, Exotic Motors purchased the Porsche from Mr. Grant on or about April 7, 2015 for $150,000.00.  In return, Mr. Grant agreed to convey the Porsche's title and deliver the car to a pick-up location.  Exotic Motors held up its end of the bargain, delivering a car in partial trade on the Porsche and wiring $90,000 to Mr. Grant's bank account in

Philadelphia, Pennsylvania on April 10, 2015. Mr. Grant, however, never provided good title to the Porsche, and never delivered the car.

3. Instead, in mid-April, Mr. Grant provided Exotic Motors unsigned, undated papers that did not convey title. Worse, Mr. Grant never delivered the car. Instead, Mr. Grant misrepresented to Exotic Motors that he had dropped the car off at the delivery spot, but in fact, he traded the Porsche into to another car dealership, O'Gara Coach Company in Beverly Hills, California, in trade for another car he purchased from O'Gara sometime between May 26, 2015 and June 26, 2015. O'Gara immediately resold the Porsche to an exotic car dealer/broker in California named Joel Chote.

4. In the Lawsuit, Exotic Motors seeks the immediate possession of the Porsche and, if it cannot be given possession, compensatory, consequential and punitive damages.

## THE PARTIES

5. Exotic Motors is a limited liability company organized under the laws of the State of Missouri, with its principle place of business in St. Louis County, Missouri. Exotic Motors' sole member is Daniel Baker, who is a citizen of Missouri. Accordingly, Exotic Motors is a citizen of Missouri.

6. Gordon Grant is a citizen of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

7. This Court has personal jurisdiction over Gordon Grant because he transacted business in Missouri, made a contract within Missouri, and/or committed a tort in Missouri, and is thus subject to jurisdiction under Missouri's long-arm statute, Mo. Rev. Stat. §§ 506.500.1(1)-(3).

8. This Court has subject-matter jurisdiction over this lawsuit under 28 U.S.C. §

1332 because the parties are completely diverse and the amount in controversy, excluding interest and costs, exceeds $75,000.00.

9. Venue is appropriate in this District under 28 U.S.C. § 1391 because Exotic Motors resides in this District, and a substantial part of the events or omissions giving rise to Exotic Motors claims for relief occurred in this District.

## GENERAL ALLEGATIONS

10. In the spring of 2015, Exotic Motors entered into negotiations with Mr. Grant for the purchase of the Porsche and a 2013 Lamborghini Gallardo LP570-4, VIN Number ZHWGU8AY8DLA12658 (the "Lamborghini").

11. Ultimately, the parties worked out a three-car and cash, package deal for the Porsche and the Lamborghini as follows: Mr. Grant would convey the Lamborghini and Porsche to Exotic Motors, and in turn, Exotic Motors would convey a 2012 Lexus LF-A, VIN JTHHX8BH2C1000207 (the "Lexus") to Mr. Grant and pay him $90,000.

12. Exotic Motors had to purchase the Lexus from a third-party dealer for $274,000 so that it could convey it to Mr. Grant.

13. Exotic Motors and Mr. Grant agreed upon the purchase prices for the three cars, which are reflected in their written communications, as follows: the Porsche, $150,000.00; the Lamborghini, $215,000.00; and the Lexus, $275,000.00. Thus, the only cash exchanged would be Exotic Motors' payment of the $90,000 difference to Mr. Grant: ($150,000 (Porsche) + $215,000 (Lamborghini)) = $365,000 – $275,000 (Lexus) = $90,000.

14. Because Mr. Grant was leasing the Lamborghini, he requested that Exotic Motors write the deal as a collateral swap of the Lamborghini for the Lexus, which would allow him to substitute collateral on his lease and transfer his existing lease on the Lamborghini to the Lexus,

and then write up the $90,000 difference as payment for the Porsche.  Because the net to both parties was the same, Exotic Motors agreed to write up the paperwork as Mr. Grant requested.  As a result, for the Porsche, Mr. Grant would receive $60,000.00 in equity from his receipt of the Lexus, which, together with the $90,000.00 in additional funds Exotic Motors was to wire, would make up the $150,000.00 purchase price for the Porsche.

15. Thus, the parties exchanged the Lexus and the Lamborghini, and their respective titles.  Exotic Motors and Mr. Grant executed a Purchase Contract/Bill of Sale dated April 5, 2015, but signed on or about April 7, 2015, to document the sale of the Porsche from Mr. Grant to Exotic Motors.  On April 10, 2015, Exotic Motors wired $90,000 for the Porsche to Grant's account at Central Bancompany, in Philadelphia, Pennsylvania.  Mr. Grant agreed to convey the car's title to Exotic Motors, and to deliver the car to a pick-up location at a mutually-agreeable time and place.

16. Exotic Motors did not plan to take physical possession of the Porsche.  Rather, it intended to re-sell the vehicle to another buyer, and to have the Porsche transferred to that buyer when it was convenient for its buyer and Mr. Grant.

17. Exotic Motors did just that.  It sold the Porsche to a third-party promptly after it bought the Porsche from Mr. Grant.  Exotic Motors' buyer paid Exotic Motors $210,000 for the Porsche.

18. However, after executing the Purchase Contract, Mr. Grant did not send the title to Exotic Motors.  He sent an incomplete "Reassignment of Certificate of Ownership By Licensed New Jersey Dealer" for the Porsche, along with a Salvage Certificate issued by the state of California.

19. The Salvage Certificate was issued to Hagerty Insurance Agency on August 13,

2009 – before Mr. Grant purported to receive title to the Porsche under the Reassignment Certificate.  The reverse side of the Salvage Certificate shows that title to the Porsche was assigned from Hagerty Insurance to California Auto Recycling on September 24, 2009.

20. The Reassignment Certificate was undated, and purported to show a reassignment of title from a New Jersey dealer, TopGear Imports, LLC, to Mr. Grant.

21. Mr. Grant, however, never signed the document, and the document did not identify how TopGear gained title from California Auto Recycling, the last known entity with title pursuant to the Salvage Title.

22. Thus, despite his representation to the contrary, Mr. Grant did not have title to the Porsche.  Exotic Motors told Mr. Grant that he needed to provide Exotic Motors with the appropriate title.  Mr. Grant represented that he would take the steps needed to get the Porsche appropriately titled so that he could provide good title to Exotic Motors.

23. Over the next several weeks, Exotic Motors and its agents and employees waited for valid title to the Porsche, as required under the terms of the deal.  Primarily over text message, Mr. Grant said that he was doing everything he could to get the title issues taken care of, that he was retitling the car in Pennsylvania, then New Jersey, then Pennsylvania again.

24. Through the end of June, Mr. Grant told Exotic Motors that either the Pennsylvania Department of Motor Vehicles, an independent dealership, or both, had lost the original documents regarding the Porsche's ownership, and that he was still trying to have the car re-titled.

25. If fact, as Exotic Motors later discovered, Mr. Grant had the Porsche re-titled in his name on May 20, 2015.

26. With a nervous and angry buyer, Exotic Motors decided it needed to take

possession of the Porsche while Mr. Grant was working out the purported title issues.

27. Through text messages exchanged with the salesman and Exotic Motors' principal on June 23, 2014, Mr. Grant agreed to deliver the Porsche to a Porsche dealer in Newtown Square, Pennsylvania called Porsche of the Main Line by June 24, 2015, who would hold the Porsche on Exotic Motors' behalf.  Mr. Grant agreed that he would leave the Porsche with the service department of the dealership.

28. To make sure everything went smoothly, Exotic Motors sent one of its salesman to Pennsylvania to pick up the Porsche.

29. Via text message sent to Exotic Motors' salesman on June 25, 2015, Mr. Grant represented that he delivered the Porsche to Main Line Porsche.

30. Main Line Porsche, however, never received the car.

31.  When Exotic Motors told Mr. Grant the dealership did not receive the Porsche, Mr. Grant represented that he did not actually leave the Porsche in the dealership's service lot, but left it in an adjoining parking lot, outside a florist's shop.  He also said that, rather than drop the keys in the key-drop at the service entrance, he left the keys in the car.

32. At this point, Exotic Motors' salesman was in Newton Square at the dealership. The salesman confirmed with the dealer that the car had not been delivered, that the dealership's security cameras did not show a delivery, and that no one from the dealership had towed the car.

33. Exotic Motors' salesman also went to the florist's shop, and confirmed that the shop did not have any vehicles towed the previous night, and that no one from the shop had seen the Porsche.

34. When confronted with all this information, Mr. Grant still maintained that he dropped the Porsche off, and that the car was stolen.

35. Exotic Motors again and repeatedly demanded that Mr. Grant surrender the Porsche immediately, but Mr. Grant refused, maintaining that he did not know where the car was.

36. Exotic Motors has since done additional investigating. Contrary to Mr. Grant's representations, the Porsche's CARFAX report shows that Mr. Grant or his designee obtained a new Salvage Title/Certificate from the Pennsylvania Motor Vehicle Department in Philadelphia, Pennsylvania on May 20, 2015.

37. Had he assigned and conveyed this certificate to Exotic Motors as agreed, this certificate would have provided Exotic Motors good title. He did not.

38. Six days later, on May 26, 2015, Mr. Grant procured another new title for the Porsche from the Pennsylvania Motor Vehicle Department. This time, instead of a salvage title, Mr. Grant obtained a rebuilt title, which increased the value of the Porsche.

39. Had he assigned and conveyed this title to Exotic Motors, Exotic Motors would have had good title to the Porsche. He did not.

40. Sometime between May 26, 2015 and June 26, 2015, Mr. Grant traded the Porsche to O'Gara Coach Company, a luxury car dealership in Beverly Hills, California on the purchase of another car.

41. Because Mr. Grant never delivered the Porsche or its title to EMMW, EMMW had to refund the $210,000 its buyer had paid EMMW for the Porsche.

42. In acting as he did, Mr. Grant acted intentionally, wrongfully, outrageously, wantonly maliciously, in bad faith and/or with reckless indifference to Exotic Motors', and its customer's, rights.

## COUNT I
## REPLEVIN

43. For this paragraph 43, Exotic Motors pleads, alleges, and incorporates by reference Paragraphs 1 through 42 of the Complaint as if set forth fully herein.

44. From April 7, 2015 to the present, Exotic Motors was and is the lawful owner of the Porsche and had and has the immediate right to possess the Porsche on demand.

45. By refusing to provide the Porsche upon demand, Mr. Grant unlawfully assumed the right of ownership of the Porsche to the exclusion of Exotic Motors' rights.

46. By trading the Porsche to O'Gara, Mr. Grant unlawfully assumed the right of ownership of the Porsche to the exclusion of Exotic Motors' rights.

47. At the time of its conversion, the Porsche was worth at least $210,000.

48. Mr. Grant's refusal to deliver the Porsche, and his subsequent trade-in of the Porsche to O'Gara, constitutes a wrongful taking of Exotic Motors' property.

49. Exotic Motors has been damaged in an amount to be proven to the jury.

WHEREFORE, Exotic Motors hereby respectfully prays that the Court:

a. Enter judgment against Mr. Grant directing him to provide the Porsche to Exotic Motors immediately;

b. Enter judgment against Mr. Grant for punitive damages that are fair and reasonable under the circumstances;

c. Award Exotic Motors such other and further relief as the Court deems just and proper.

## COUNT II
## CONVERSION

50. For this paragraph 50, Exotic Motors pleads, alleges, and incorporates by

reference Paragraphs 1 through 49 of the Complaint as if set forth fully herein.

51. From April 5, 2015 to the present, Exotic Motors was and is the lawful owner of the Porsche and had and has the immediate right to possess the Porsche on demand.

52. By refusing to provide the Porsche upon demand, Mr. Grant unlawfully assumed the right of ownership of the Porsche to the exclusion of Exotic Motors' rights.

53. By trading the Porsche to O'Gara, Mr. Grant unlawfully assumed the right of ownership of the Porsche to the exclusion of Exotic Motors' rights.

54. At the time of its conversion, the Porsche was worth at least $210,000.

55. Mr. Grant's refusal to deliver the Porsche, and his subsequent trade-in of the Porsche to O'Gara, constitutes a wrongful taking of Exotic Motors' property.

56. Exotic Motors has been damaged in an amount to be proven to the jury, which amount will include, at a minimum, the $90,000 it paid to Mr. Grant, the $60,000 in equity Mr. Grant received from the Lexus, and the $60,000 in lost profits from the sale of the Porsche to its buyer.

WHEREFORE, Exotic Motors hereby respectfully prays that the Court:

a. Enter judgment against Mr. Grant and in favor of Exotic Motors for at least $210,000, or for the highest value of Porsche from April 5, 2015 until the transfer of the Porsche to O'Gara;

b. Enter judgment against Mr. Grant for punitive damages that are fair and reasonable under the circumstances.

c. Award Exotic Motors such other and further relief as the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT

57. For this paragraph 57, Exotic Motors pleads, alleges, and incorporates by reference Paragraphs 1 through 42 of the Complaint as if fully set forth herein.

58. The Purchase Contract/Bill of Sale, and the three-car and cash deal, are a valid and enforceable contract.

59. Exotic Motors complied with all its obligations under the Purchase Contract and the parties' deal.

60. Mr. Grant was obliged under the Purchase Contract and the deal to convey good title to the Porsche, and to deliver the Porsche to Exotic Motors on demand.

61. Mr. Grant breached the Purchase Contract and the parties' deal by failing and refusing to provide title, and by failing and refusing to deliver the Porsche.

62. Exotic Motors has suffered damages as a result of Mr. Grant's breaches, including the $90,000 it paid to Mr. Grant, the $60,000 in equity Mr. Grant received in the Lexus, and the $60,000 in lost profits from the sale of the Porsche to its buyer.

WHEREFORE, Exotic Motors hereby respectfully prays that the Court:

a. Enter judgment against Mr. Grant in an amount that will fairly compensate for his breach; or

b. Alternatively, enter judgment requiring him to specifically perform the Purchase Contract, provide Exotic Motors with title to the Porsche, and deliver the Porsche to Exotic Motors immediately; and

c. Award Exotic Motors such other and further relief as the Court deems just and proper.

## COUNT IV
## UNJUST ENRICHMENT

63. For this Paragraph 63, Exotic Motors pleads, alleges, and incorporates by reference Paragraphs 1 through 42 of the Complaint as if fully set forth herein.

64. Pleading in the alternative, Exotic Motors pleads and avers that Mr. Grant is liable to Exotic Motors for unjust enrichment.

65. Exotic Motors wired Mr. Grant $90,000 as partial payment for the Porsche, which conferred a benefit upon Mr. Grant.

66. Exotic Motors traded the Lexus for the Lamborghini as part of the consideration for the purchase of the Porsche.  The equity differential between these two cars was $60,000.  Thus, by providing Mr. Grant with the Lexus (worth $275,000), and receiving the Lamborghini from Mr. Grant in return (worth $215,000), Exotic Motors caused Mr. Grant to obtain $60,000 in equity in the Lexus, which conferred a benefit upon him.

67. Mr. Grant accepted the $90,000 cash and the $60,000 in equity.

68. Exotic Motors did not provide this cash and equity gratuitously, but rather, it provided the cash and equity with the expectation that it would receive the Porsche, with good title, in return.

69. Mr. Grant accepted and retained the cash and the equity and appreciated the benefits thereof.

70. Mr. Grant understood and appreciated that the cash and equity were being provided with the expectation of payment.

71. Mr. Grant's retention of the goods and services without payment is inequitable.

72. The reasonable value of the cash and equity provided, but for which Exotic Motors has not received recompense is $150,000.

73. Exotic Motors has been damaged by Mr. Grant's wrongful actions.

WHEREFORE, Exotic Motors hereby respectfully prays that the Court:

a. Enter judgment against Mr. Grant for $150,000 or in an amount that will fairly compensate for his wrongful conduct; and

b. Award Exotic Motors such other and further relief as the Court deems just and proper.

DATED: July 17, 2015 Respectfully submitted,

                                           GREENSFELDER, HEMKER & GALE, P.C.

                                           By     /S/ Lizabeth Conran
                                                     Lizabeth Conran, #49937
                                                     lmc@greensfelder.com
                                                     Clark W. Hedger, #60389
                                                     ch1@greensfelder.com
                                                     10 South Broadway, Suite 2000
                                                     St. Louis, Missouri 63102
                                                     314-241-9090
                                                     314-241-9743 (Facsimile)

                                                     *Attorneys for Exotic Motors Midwest LLC*